```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
THE UNITED STATES OF AMERICA FOR THE
USE AND BENEFIT OF GALVIN BROS., INC.,

                    Plaintiff,

        -against-                            MEMORANDUM & ORDER
                                             14-CV-6051(JS)(SIL)
FIDELITY AND DEPOSIT COMPANY OF
MARYLAND,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:     David Westerman, Jr., Esq.
                   Robert J. Fryman, Esq.
                   Westerman Sheehy Keenan
                   Samaan & Aydelott LLP
                   The Omni Building
                   333 Earle Ovington Boulevard
                   Uniondale, NY 11553

For Defendants:    Timothy B. Froessel, Esq.
                   Holland & Knight LLP
                   31 West 52nd Street, 12th Floor
                   New York, New York 10019
```

SEYBERT, District Judge:

Pending before the Court is defendant Fidelity and Deposit Company of Maryland's ("Fidelity") motion to dismiss the Complaint for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative, to transfer this case to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404. (Docket Entry 7.) As discussed below, Fidelity's motion is GRANTED.

BACKGROUND[1]

This construction dispute concerns work completed on the Renovation of Rogers Hall, a public improvement project undertaken at the United States Merchant Marine Academy in Kings Point, New York (the "Project"). (Compl. ¶ 6; Def.'s Opp. Br., Docket Entry 9, at 1.) Non-party Kallidus Technologies ("Kallidus") entered into a contract with the United States of America to perform work associated with the Project. (Compl. ¶ 6.) Kallidus then entered into a subcontract (the "Contract") with plaintiff Galvin Bros. Inc. ("Galvin") to provide labor and equipment for lighting and fire alarm system work on the Project. (Compl. ¶ 8.)

The Contract between Galvin and Kallidus includes the following forum selection clause:

> 6.4 Notwithstanding the foregoing, and in consideration of $100 paid to the Subcontractor, the receipt whereof is acknowledged as part of the Subcontract Sum, at the sole option of the Contractor, any controversy, dispute or claim between the Contractor and the Subcontractor related in any way to this Agreement or the Project may be determined by a separate action in court or by a separate arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then pertaining, whichever the Contractor may elect in its sole discretion. The parties expressly agree that the venue of any such court action or arbitration shall be Boston, Massachusetts. Any award rendered by the arbitrator or

---

[1] The following facts are primarily taken from Plaintiff's Complaint and are presumed to be true for the purposes of this Memorandum and Order.

> arbitrators shall be final and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction.
>
> 6.8 The Subcontractor, on behalf of itself and its assignees, sureties and agents, if any, agrees that the dispute resolution procedure in this Article shall inure to the benefit of, and be enforceable by, the Contractor and its sureties or assignees, and that such terms shall be deemed incorporated into any payment, labor and material or other similar bond issued by or for the Subcontractor regarding the Project.

(Def.'s Br., Docket Entry 8, Ex. 2.)

Kallidus secured a payment bond from Fidelity, as required by the Miller Act, for the protection of persons supplying labor and materials for the Project. (Compl. ¶ 7.) Galvin claims that it performed all of its obligations under the Contract, but that Kallidus only paid it $1,558,500 out of the $1,765,000 Contract price, leaving $191,653.75 due. (Compl. ¶¶ 8-10.) Galvin commenced this action on October 15, 2014 seeking payment from Fidelity, Kallidus's surety.

On December 2, 2014 Fidelity filed a motion seeking to dismiss this case for improper venue, or in the alternative, to transfer the case to the United States District Court for the District of Massachusetts. (Docket Entry 7.) Fidelity relies on the plain language of the forum selection clause placing venue in Boston, Massachusetts. (Def.'s Br. at 1-2.) Galvin argues in opposition that: (1) the forum selection clause does not apply to

3

Fidelity, (2) it would be difficult and inconvenient for Galvin to litigate in Boston, and (3) New York public policy should override the forum selection clause. (See Pl.'s Opp. Br., Docket Entry 11, at 6-21.)

## DISCUSSION

Under the Miller Act (the "Act"), a contractor who performs "construction, alteration, or repair of any public building or public work of the Federal Government" must provide two types of bonds: a "performance bond . . . for the protection of the Government" against defaults by the contractor, and a "payment bond . . . for the protection of all persons supplying labor and material." 40 U.S.C. § 3131; U.S. ex rel. Maris Equip. Co. v. Morganti, Inc., 163 F. Supp. 2d 174, 179 (E.D.N.Y. 2001). The Act gives those who "furnished labor or material" to a federally-funded project the right to bring an action compelling the surety to pay any unpaid balance for labor or materials furnished. 40 U.S.C. § 3133(b)(1); See Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 257, 119 S. Ct. 687, 689, 142 L. Ed. 2d 718 (1999). The act also states that the action "must be brought . . . in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. § 3133(b)(3)(B). But courts interpreting the venue provision have uniformly held that it does not create a jurisdictional requirement and can be modified

4

by contract.  See, e.g., U.S. for Use & Benefit of Capolino Sons, Inc. v. Elec. & Missile Facilities, Inc., 364 F.2d 705, 707-08 (2d Cir. 1966) (holding that the Miller Act's venue requirement did not prevent two parties from arbitrating their dispute, as their contract required); John's Insulation, Inc. v. Siska Constr. Co., 671 F. Supp. 289, 293, 1987 (S.D.N.Y. 1987) ("it has long been recognized that the Act's exclusive venue provision may be altered by contract"); U.S. ex rel. B&D Mech. Contractors, Inc. v. St. Paul Mercury Ins. Co., 70 F.3d 1115, 1117 (10th Cir. 1995) (explaining that "a valid forum selection clause supersedes the Miller Act's venue provision").

I. Whether the Forum Selection Clause Can be Enforced by Fidelity

Galvin does not dispute that the venue requirement within the Miller Act can be modified by contract.  Instead, Galvin claims the forum selection clause within the parties' Contract does not apply to disputes between Galvin and Fidelity, it only applies to disputes between Galvin and Kallidus.  (Pl.'s Opp. Br. at 7.)

Courts in this circuit use a four part analysis to determine whether a case should be dismissed based upon a forum selection clause.  We must first ask:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any [ ]

5

> dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

Martinez v. Bloomberg LP, 740 F.3d 211, 217 (2d Cir. 2014) (internal quotation marks and citation omitted); S.K.I. Beer Corp. v. Baltika Brewery, 612 F.3d 705, 708 (2d Cir. 2010). If the forum selection clause is deemed to valid, the "burden [is] on the plaintiff, who brought suit in a forum other than the one designated by the forum selection clause, to make a 'strong showing' in order to overcome the presumption of enforceability." New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997). Here, Galvin does not contest that the forum selection clause was communicated to it; that it is a mandatory clause; and that it covers the claims at issue.

Instead, Galvin first claims that, as a matter of contract interpretation, Fidelity cannot enforce the forum selection clause, and thus the Miller Act's venue provision should control. However, the Contract is explicit that the forum selection clause can be enforced by either Kallidus or it surety,

6

Fidelity. The forum selection clause within the dispute resolution article of the Contract states that:

> 6.4 . . . [a]ny controversy, dispute or claim between [Kallidus] and [Galvin] related in any way to this Agreement or the Project may be determined by a separate action in court . . . . <u>The parties expressly agree that the venue of any such court action or arbitration shall be Boston, Massachusetts.</u>

(Def.'s Br. Ex. 2 (emphasis added).) Section 6.8 of the dispute resolution article goes on to state that:

> [Galvin], on behalf of itself and its assignees, sureties and agents, if any, agrees that <u>the dispute resolution procedure in this Article shall inure to the benefit of, and be enforceable by, [Kallidus] and its sureties or assignees, and that such terms shall be deemed incorporated into any payment, labor and material or other similar bond issued by or for [Galvin] regarding the Project</u>.

(Def.'s Br. Ex. 2 (emphasis added).) Section 6.8 makes clear that the dispute resolution procedure, including the forum selection clause, can be enforced by <u>both</u> Kallidus and its sureties, and that it is incorporated into the payment bond issued for Galvin's benefit. The Court therefore finds that the forum selection clause can be enforced by Fidelity and rejects Galvin's contract interpretation argument.

II. <u>Is the Forum Selection Clause Unreasonable or Unjust</u>

Galvin argues that the difficulty and inconvenience of litigating this dispute in Massachusetts would make it "unfair, unjust or unreasonable" to transfer the lawsuit there. (Pl.'s

7

Opp. Br. at 16-17 n.10.)  When a valid forum selection clause exists, a party seeking to escape the contract forum on the ground that it would be inconvenient to litigate there must show that "the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18, 92 S. Ct. 1907, 1917, 32 L. Ed. 2d 513 (1972).  Galvin is unable to meet this high burden.  Galvin claims that all of the witnesses with personal knowledge of the Project reside in New York, and that litigating in Massachusetts would pose "financial, logistical and even legal obstacles."  (Pl.'s Opp. Br. at 19-20.)  Galvin specifically points to the difficulty it may have compelling non-party witnesses to respond to discovery and to appear at trial.  (Pl.'s Opp. Br. at 20.)  However, evidence that it would be more difficult to litigate in the contract forum is not enough.  TradeComet.com LLC v. Google, Inc., 693 F. Supp. 2d 370, 380-81 (S.D.N.Y. 2010) aff'd in part, 647 F.3d 472 (2d Cir. 2011), aff'd in part, 435 F. App'x 31 (2d Cir. 2011) (finding that "although litigating . . . in California rather than New York likely will be more burdensome for [the plaintiff], which has its principal place of business in New York, there is no suggestion that it would be so difficult as to deprive [the plaintiff] of a fair opportunity to litigate its claims."); Phillips v. Audio Active Ltd., 494 F.3d 378, 392-93 (2d Cir. 2007) (rejecting the plaintiff's argument

8

that litigating in England--the contract forum--would be impossible; "litigation in England may be more costly or difficult, but not that it is impossible."); Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V., No. 09-CV-3573, 2010 WL 3743826, at *9-10 (S.D.N.Y. Sept. 24, 2010) (rejecting the argument that it would be overly burdensome to litigate in New York when the defendant resided in Mexico). Galvin has not demonstrated that for practical purposes it would be deprived of its day in court in Massachusetts, the forum the parties chose in their freely negotiated agreement.

III. New York Public Policy

Calvin also argues that the Court should disregard the forum selection clause in the contract because there is a New York State public policy favoring the resolution of construction disputes in New York. (Pl.'s Opp. Br. at 15.) Galvin contends that the policy is codified in New York's Prompt Payment Act, New York General Business law, Article 35-e. (Pl.'s Opp. Br. at 15-16.) Galvin specifically points to New York General Business law Section 757, which voids any "provision, covenant, clause or understanding in . . . a construction contract. . . that makes the contract subject to the laws of another state or that requires any litigation, arbitration or other dispute resolution proceeding arising from the contract to be conducted in another state." N.Y. GEN. BUS. LAW § 757. However, Article 35-e of the New York General Business Law expressly only applies to private construction

9

projects, not public projects. See N.Y. GEN. BUS. LAW § 756. Moreover, federally-funded construction projects are governed by the Miller Act and controlled by federal, not state law. See 40 U.S.C. § 3131; F. D. Rich Co. v. U. S. for Use of Indus. Lumber Co., 417 U.S. 116, 127, 94 S. Ct. 2157, 2164, 40 L. Ed. 2d 703 (1974) "(The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law."); See also Technica LLC ex rel. U.S. v. Carolina Cas. Ins. Co., 749 F.3d 1149, 1152 (9th Cir. 2014). Galvin's public policy argument therefore must be rejected.

IV. Dismissal or Transfer

Since this Court has found the forum selection clause enforceable, the next issue to be addressed is whether to dismiss this case for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or to transfer the case to the appropriate venue pursuant to 28 U.S.C. § 1404. "Determining whether to dismiss or transfer depends upon which remedy is most consistent with the forum selection clause at issue." GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc., 198 F.R.D. 402, 409 (S.D.N.Y. 2001). Here, the forum selection clause was mandatory and required suit in "Boston, Massachusetts." However, the forum selection clause does not require the parties to resolve their dispute in federal court. In fact, the clause expressly contemplates the

possibility that disputes concerning the Project may be resolved through arbitration.  It would therefore be presumptuous to assume that the only available venue for this action is the United States District Court for the District of Massachusetts.  Therefore, this case is DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(3).  Galvin may refile this case in the United States District Court for the District of Massachusetts, or an alternative form in Boston, Massachusetts.

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer venue (Docket Entry 7) is GRANTED and this case is DISMISSED WITHOUT PREJUDICE.  The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT  
Joanna Seybert, U.S.D.J.

Dated:   September __30__, 2015  
         Central Islip, New York